IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SHEILA M. HEARTFIELD,            )
                                 )
                   Plaintiff,    )
                                 )
vs.                              )          Case No. 04-4121-SAC
                                 )
JO ANNE B. BARNHART,             )
COMMISSIONER OF                  )
SOCIAL SECURITY,                 )
                                 )
                   Defendant.    )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
disability insurance benefits and supplemental security income
payments.  The matter has been fully briefed by the parties
and has been referred to this court for a recommendation and
report.

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the
Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive."  The court should review the
Commissioner's decision to determine only whether the decision

1

was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall

2

be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the

impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency

4

will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five.   20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

The administrative law judge (ALJ), John J. Rubin, issued his decision on May 24, 2004.  The ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of March 2, 2001 (R. at 17).  At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease with radiculopathy and disc dissection at L4-5, with disc bulging at L4-5, and mild disc bulging at L5-S1, but without nerve root impingement or stenosis, urinary stress incontinence, mood disorder secondary to physical complaints, and asthma (R. at 17).  The ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After establishing plaintiff's RFC, the ALJ determined that plaintiff could not perform past relevant work (R. at 21-22).  At step five, the ALJ found, based on the testimony of the vocational expert, that plaintiff could perform the following sedentary work: surveillance system monitor, subassembler, and information clerk (R. at 22).  Based on this finding, the ALJ determined that plaintiff was not disabled (R. at 22).

**I.  Did the ALJ err in his determination of plaintiff's RFC and in his analysis of the opinions of plaintiff's treating physicians?**

The ALJ established the following RFC for the plaintiff:

> Accordingly, after careful consideration of the above medical evidence, the undersigned finds that claimant retains the following residual functional capacity: She cannot lift more than ten pounds even occasionally, she cannot walk for prolonged periods, and she cannot work without the opportunity to alternate sitting and standing positions at fifteen minute intervals. She cannot stoop, squat, crouch, crawl. kneel or climb, and she can only occasionally bend. She also cannot perform work requiring more than moderate exposure to dust, fumes, odors (including chemical odors, perfumes or colognes), smoke, gasses, chemical agents, and temperature or humidity extremes. Due to her mental impairments, claimant has mild restrictions in activities of daily living, not preventing her from regularly performing such daily activities as bathing, grooming, dressing, cooking, house cleaning, using public transportation, driving and handling financial matters; mild difficulties in maintaining social functioning, not preventing regular interaction with co-workers, supervisors, or the public during the workday; moderate difficulties in maintaining concentration, persistence or pace, not precluding her from completing simple one or two-step work-related tasks in a timely manner, or understanding, remembering and carrying out simple instructions in a timely manner; and she has had no episodes of decompensation of extended duration.

(R. at 21).

According to SSR 96-8p, the RFC assessment must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts and nonmedical
evidence.  The ALJ must explain how any material
inconsistencies or ambiguities in the evidence in the case
record were considered and resolved.  The RFC assessment must
always consider and address medical source opinions.  If the
RFC assessment conflicts with an opinion from a medical
source, the ALJ must explain why the opinion was not adopted.
SSR 96-8p, 1996 WL 374184 at *7.  When the ALJ fails to
provide a narrative discussion describing how the evidence
supports each conclusion, citing to specific medical facts and
nonmedical evidence, the court will conclude that his RFC
conclusions are not supported by substantial evidence.  See
Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir.
2003).

In this case, the ALJ failed to provide a narrative
discussion of how the evidence supported each of his
conclusions.  The ALJ simply refers to his "careful
consideration of the above medical evidence" (R. at 21), that
weight was accorded to plaintiff's subjective complaints and
limitations "where supported by the objective evidence of

7

record" (R. at 21), and that he has considered medical opinions from acceptable medical sources which reflect judgments about the nature and severity of the impairment and resulting limitations (R. at 21).  As can be seen, all of these statements are mere conclusory statements.  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).

Furthermore, the court finds that the RFC findings of the ALJ inexplicable in light of the medical opinion evidence and the weight given to that evidence by the ALJ.  Dr. Kathryn Willingham is one of plaintiff's treating physicians.  On January 8, 2004, she wrote the following concerning the plaintiff:

> She has chronic severe low back pain due to disc disease as well as pain that radiates into her right leg.
>
> This interferes significantly with all of her activities of daily living.  It also

8

> exacerbates her other medical conditions
> including hypertension.  She takes chronic
> pain medication with only partial relief.
>
> I have recommended to Sheila that she not
> lift anything greater than 5 pounds.  I
> have advised her not to walk or stand more
> than ten minutes at a time and not to
> remain in the seated position for more than
> 15 minutes at a time.

(R. at 484).

On October 20, 2001, Dr. Joseph Stein, a neurologist, provided

a consultative report.  After examining MRI studies and an

examination of, and interview with, the plaintiff, he made the

following findings:

> My finding today is that the patient is
> severely limited in her ability to do
> anything beyond most of her self care.  She
> needs help to get her socks on.  She is
> unable to drive a motor vehicle because of
> severe pain.  She does not tolerate sitting
> or standing for more than very short
> periods of time.

(R. at 240).  By contrast, the only other physical RFC

findings made by a medical source was the state agency

consultant who did not examine the plaintiff, but only

reviewed the medical records.  The assessment of the state

agency consultant (dated July 9, 2001) was that plaintiff

could occasionally lift 50 pounds, frequently lift 25 pounds,

with no limitations given on the ability to stand or walk, and

no indication that plaintiff needed to alternate sitting and

9

standing (R. at 218).

A comparison of the RFC established by the ALJ with the opinions of Drs. Willingham and Stein and the state agency assessment reveal the following:

<u>Lifting</u>:

Willingham: not lift anything grater than 5 lbs.

State agency: 50 lbs. occasionally & 25 lbs. frequently

RFC (by ALJ): cannot lift more than 10 lbs. even occasionally

<u>Stand/walk</u>:

Willingham: not to walk or stand more than 10 minutes at a time

Stein: does not tolerate sitting or standing for more than very short periods of time

State agency: no limitation

RFC: cannot walk for prolonged periods ("By that, I mean she could walk around the room or between rooms but not any more than that." (R. at 540))

<u>Sitting</u>:

Willingham: Not to remain in the same seated position for more than 15 minutes at a time.

Stein: does not tolerate sitting or standing for more than very short periods of time

> State agency: No need to alternate sitting and standing.
>
> RFC: Cannot work without the opportunity to alternate sitting and standing positions at 15 minute intervals.

In the lifting limitation, the ALJ came much closer to Dr. Willingham's assessment than the state agency assessment, finding that plaintiff could lift up to 10 lbs. as opposed to 5 lbs.  On the question of standing, walking and sitting, the ALJ's RFC assessment appears quite similar to that of Drs. Willingham and Stein.  In comparing the RFC assessment by the ALJ with the opinions of Drs. Willingham and Stein, the court finds that, on their face, the ALJ findings are consistent with the limitations found by the two physicians with the exception that the ALJ determined that the plaintiff had a higher lifting limitation than the limitation set by Dr. Willingham.  The ALJ also found that plaintiff must alternate sitting and standing every 15 minutes while Dr. Willingham opined that plaintiff could not stand for more than 10 minutes; they did agree that plaintiff was limited to sitting for 15 minutes at a time.  It would be quite reasonable to conclude that the ALJ gave a great deal of weight to the opinions of Drs. Willingham and Stein.

In light of these similarities, the court is perplexed by the analysis that the ALJ gave to the above opinions of Dr.

11

Willingham:

> The undersigned has also considered the
> January 2004 report of claimant's treating
> physician. Dr. D. Willingham... However,
> the undersigned **cannot give any weight to
> this opinion** because it is wholly
> unsupported by objective medical, clinical
> or laboratory finding, or mental status
> examinations or psychological evaluations
> or testing by the treating source in
> question, and it is inconsistent with the
> objective evidence of record described
> above, including testing completed by this
> treating source, which is summarized above
> and which includes a number of
> inconsistencies strongly suggesting that
> claimant has exaggerated the extent of her
> impairments. Moreover, repeated physical
> and neurological examinations of claimant
> noted above have frequently shown her to
> have negative straight leg raising, normal
> gait. few if any sensory deficits, and
> normal orthopedic maneuvers on many
> occasions. In addition, an EMG study in
> August 2002 was normal, with no evidence of
> lumbar radiculopathy.

(R. at 20, emphasis added).  Furthermore, the ALJ never

mentioned the above findings of Dr. Stein in his decision.

The court is at a complete loss to understand how the ALJ can

give no weight to the opinion of Dr. Willingham and fail to

even mention Dr. Stein's opinions in light of the fact that

his RFC of the plaintiff closely parallels the opinions of

Drs. Willingham and Stein.  By sharp contrast, the ALJ appears

to have completely rejected the opinion of the state agency

assessment, and made findings much more restrictive as noted

above, and also included postural and environmental
limitations not found by the state agency consultative
assessment.[1]  There is no other medical evidence that supports
many of the physical RFC findings of the ALJ other than the
opinions of Drs. Willingham and Stein.

This leaves the court without any reasonable explanation
of the basis for the ALJ's RFC determination.  This is exactly
why it is so critical that "the RFC assessment must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts and nonmedical
evidence...The adjudicator must also explain how any material
inconsistencies or ambiguities in the evidence in the case
record were considered and resolved."  SSR 96-8p, 1996 WL
374184 at *7.

Given the fact that the RFC determination by the ALJ is
quite similar to the opinions of Drs. Willingham and Stein on
plaintiff's ability to stand, walk and sit, it is important
for the ALJ to explain why he found that plaintiff can lift 10

_____

[1]The fact that the ALJ adopted much more restrictive
physical limitations than those set forth in the state agency
consultative assessment is even more puzzling in light of the
ALJ's statement that he "accorded them weight in reaching the
conclusion that the claimant is not disabled, because they are
consistent with and supported by the findings, opinions and
conclusions of treating and examining medical sources
contained in the record" (R. at 20).

lbs. in light of Dr. Willingham's more restrictive 5 lb.
limitation.  The ALJ offers no explanation for finding a
higher weight limit for the plaintiff.  According to SSR 96-9p
(Implications of a residual functional capacity for less than
a full range of sedentary work):

> If an individual is unable to lift 10
> pounds or occasionally lift and carry items
> like docket files, ledgers, and small tools
> throughout the workday, the unskilled
> sedentary occupational base will be eroded.
> The extent of erosion will depend on the
> extent of the limitations.  For example, if
> it can be determined that the individual
> has an ability to lift or carry slightly
> less than 10 pounds, with no other
> limitations or restrictions in the ability
> to perform the requirements of sedentary
> work, the unskilled sedentary occupational
> base would not be significantly eroded;
> however, an inability to lift or carry more
> than 1 or 2 pounds would erode the
> unskilled sedentary occupational base
> significantly.  For individuals with
> limitations in lifting or carrying weights
> between these amounts, consultation with a
> vocational resource may be appropriate.

SSR 96-9p, 1996 WL 374185 at *6.  Therefore, the question of
how much weight plaintiff can lift is critical to a
determination of whether or not plaintiff can perform
sedentary work.[2]  An ALJ is not entitled to pick and choose

---

[2]It becomes even more critical when combined with
plaintiff's numerous other limitations, including her
inability to stoop.  "A complete inability to stoop would
significantly erode the unskilled sedentary occupational base
and a finding that the individual is disabled would usually

14

from a medical opinion, using only those parts that are favorable to a finding of nondisability. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). In the absence of any reasonable explanation for his determination that plaintiff can lift 10 pounds, the court finds that this finding by the ALJ is not supported by substantial evidence. On remand, the ALJ will be required to fully adhere to the requirements of SSR 96-8p and provide a narrative describing how the evidence supports each conclusion, and explain how any material inconsistencies or ambiguities were explained or resolved. The ALJ must relate the evidence to his conclusions. Furthermore, the ALJ must adhere to requirements set forth in Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003). when evaluating the opinions of treating source medical opinions. In addition, the ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

In his findings as to plaintiff's mental RFC limitations, the ALJ found that plaintiff had: (1) mild restrictions in

---

apply...Consultation with a vocational resource may be particularly useful where the individual is limited to less than occasional stooping." SSR 96-9p, 1996 WL 374185 at *8.

activities of daily living, (2) mild difficulties in
maintaining social functioning, (3) moderate difficulties in
maintaining concentration, persistence or pace, and (4) no
episodes of decompensation.  Again, the ALJ failed to provide
any explanation for why he came to these four conclusions.
The only assessment that addressed these four criteria was the
state agency consultative assessment.  That psychological
assessment (dated Jan. 24, 2002) found that plaintiff had: (1)
mild restrictions in activities of daily living, (2) mild
difficulties in maintaining social functioning, (3) mild
difficulties in maintaining concentration, persistence and
pace, and (4) insufficient evidence of decompensation (R. at
284).  The ALJ provided no explanation why he found
plaintiff's impairment greater in concentration, persistence
and pace, but agreed with the state agency assessment in the
other three categories.  Although courts are to review the
ALJ's decision for substantial evidence, the court is not in a
position to draw factual conclusions on behalf of the ALJ; the
court cannot be left to speculate what specific evidence led
the ALJ to his conclusion.  Drapeau v. Massanari, 255 F.3d
1211, 1214 (10th Cir. 2001).

     The ALJ did refer to a psychiatric consultation performed
on plaintiff when she was hospitalized in November-December

2001.  In that consultation, Dr. Bickelhaupt found that
plaintiff's GAF was 45-60.  A GAF of 41-50 indicates serious
symptoms (e.g., suicidal ideation, severe obsessional rituals,
frequent shoplifting) or any serious impairment in social,
occupational, or school functioning (e.g., no friends, unable
to keep a job), while a GAF of 51-60 indicates moderate
symptoms (e.g., flat affect and circumstantial speech,
occasional panic attacks) or moderate difficulty in social,
occupational or school functioning (e.g., few friends,
conflicts with peers or co-workers).[3]  The ALJ stated the
following concerning the findings of Dr. Bickelhaupt:

> Nevertheless, despite the scant findings of
> mental symptoms or functional limitations,
> Dr. Bickelhaupt gave claimant a global
> assessment of functioning score of 45-60,
> representing a serious to moderate
> impairment.  This GAF assessment
> encompasses a wide range of mental
> functioning, from serious to moderate, and
> is therefore not considered to be
> persuasive evidence that the claimant has a
> disabling mental impairment or functional
> limitations.

(R. at 20).

   However, the ALJ ignored the fact that the Valeo
Behavioral Health Care treatment records on the plaintiff

---

[3]Diagnostic and Statistical Manual of Mental Disorders
(4th ed). (DSM-IV), American Psychiatric Association (1994) at
32.

17

indicated on two separate occasions that plaintiff had a GAF of 50 (R. at 268, Jan. 10, 2002; R. at 472, October 2, 2002). The only reference the ALJ made to these records was to state that "additional mental status examinations were essentially normal" (R. at 20). A GAF score of 50 indicates serious symptoms, which can include the inability to keep a job. Therefore, the ALJ misstated the evidence by indicating that these mental status examinations were essentially normal. A GAF score of 50 is not an "essentially normal" score. Furthermore, these scores by treatment providers provides strong support for the GAF score given by Dr. Bickelhaupt, which was discounted by the ALJ.

In addition to stating that the mental status examinations were essentially normal, the ALJ also stated that they showed an unremarkable flow of thought, no evidence of hallucinations or delusions, unremarkable insight and judgment, and normal intellectual functioning (R. at 20). However, they actually reflect a diagnosis of major depressive disorder, severe, with psychotic features, post-traumatic stress disorder, and panic disorder (R. at 472), and a preliminary assessment including depressed mood, indications of auditory hallucinations, delusions of persecution, and suicidal thoughts (R. at 473). Again, the ALJ has clearly

18

misstated the evidence.

It is reversible error not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects. Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005). The ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995). Although, standing alone, a GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work, a GAF score of 50 or less does suggest an inability to keep a job. Thus, such GAF scores should not be ignored. Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004)(GAF score of 48). The court therefore finds that the ALJ erred by misstating the evidence, failing to consider all of the evidence relating to plaintiff's mental impairment, and by failing to provide the requisite narrative discussion in support of his mental and physical RFC findings.

**II.  Did the ALJ err in his step two analysis?**

Plaintiff argues that the ALJ erred by failing to find that plaintiff had the following additional severe impairments: obesity, borderline intellectual functioning, and headaches. The ALJ did not discuss the severity of any of these impairments.      The burden of proof at step two is

19

on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118,
1120 (10th Cir. 1993)(the claimant bears the burden of proof
through step four of the analysis).  A claimant's showing at
step two that he or she has a severe impairment has been
described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162,
1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751
(10th Cir. 1988)("de minimis showing of medical severity").  A
claimant need only be able to show at this level that the
impairment would have more than a minimal effect on his or her
ability to do basic work activities.  Williams, 844 F.2d at
751.  However, the claimant must show more than the mere
presence of a condition or ailment.  If the medical severity
of a claimant's impairments is so slight that the impairments
could not interfere with or have a serious impact on the
claimant's ability to do basic work activities, the
impairments do not prevent the claimant from engaging in
substantial work activity.  Thus, at step two, the ALJ looks
at the claimant's impairment or combination of impairments
only and determines the impact the impairment would have on
his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349,
1352 (10th Cir. 1997).

The determination at step two is based on medical factors
alone.  Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir.

2003).   A claimant must provide medical evidence that he or
she had an impairment and how severe it was during the time
the claimant alleges they were disabled.   20 C.F.R. §
404.1512(c).   The evidence that a claimant has an impairment
must come from acceptable medical sources including licensed
physicians or psychologists.   20 C.F.R. § 404.1513(a).   A
claimant's statements regarding the severity of an impairment
is not sufficient.   <u>Adame v. Apfel</u>, 2000 WL 422341 at *3-4 (D.
Kan. March 20, 2000); <u>Flint v. Sullivan</u>, 743 F. Supp. 777, 782
(D. Kan. 1990).

        In arguing that obesity is a severe impairment, plaintiff
notes that she is 5 foot, 3 inches tall and her weight has
ranged from 180 to 186 pounds.   In her reply brief, plaintiff
cites to a February 2002 medical record indicating that she
was 5 foot, 2 inches tall and weighing 190 pounds, with a body
mass index of 35 (R. at 290).   Dr. Arjunan, described
plaintiff as "obese" (R. at 241), and Dr. Stein described
plaintiff as "moderately obese" (R. at 238).   However,
plaintiff has pointed to no medical evidence that indicates
that her obesity would have more than a minimal effect on her
ability to do basic work activities.

        SSR 02-1p (evaluation of obesity) states that in the
absence of evidence to the contrary, the Commissioner will

accept a diagnosis of obesity given by a treating source or a consultative examiner.  2002 WL 32255132 at *4.  The policy ruling goes on to say the following concerning the question of when obesity is a severe impairment:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment.  Neither do descriptive terms for levels of obesity establish whether obesity is or is not a "severe" impairment for disability insurance program purposes.  Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

2002 WL 32255132 at *5.  Therefore, on remand, plaintiff is reminded that she has the burden of establishing that her obesity has more than a minimal effect on her ability to work.  However, given the fact that at least two physicians have described plaintiff as obese, the ALJ shall, pursuant to SSR 02-1p, perform an individualized assessment of the impact of plaintiff's obesity on her functioning when deciding whether plaintiff's obesity is a severe impairment.

Plaintiff also argues that the ALJ erroneously failed to consider plaintiff's borderline intellectual functioning diagnosis by Dr. Barnett.  In his consultative examination, Dr. Barnett gave a diagnostic impression which included: "consider borderline intellectual functioning" (R. at 262).  However, it is plaintiff's duty to present medical evidence

22

that the impairment would have more than a minimal effect on
her ability to work.  Dr. Barnett states in his clinical
assessment regarding ability to work that "she does not appear
to be intellectually limited and showed no difficulty with
attention or concentration during the interview" (R. at 262).
There is no evidence from Dr. Barnett's assessment that
plaintiff's intellectual functioning would have more than a
minimal effect on her ability to work.  Therefore, the court
finds no error on this point.

Plaintiff also alleges error by the ALJ in not
considering plaintiff's headaches as a severe impairment.  One
of the medical records relied on by plaintiff indicates that
she had been to the emergency room with elevated blood
pressure with headaches and blurry vision.  Dr. Willingham
noted daily headaches, and that these problems had been going
on for over a month.  Dr. Willingham further noted that her
hypertension had been very difficult to control (R. at 457).
Other records indicate headaches related to her back injury
(R. at 237).  These records indicate that the headaches are
symptoms of her hypertension and back pain.  The ALJ did find
that plaintiff's severe impairments include hypertension, disc
disease, radiculopathy, disc dissection and disc bulging (R.
at 17).  Thus, the record reflects that plaintiff's headaches

are a symptom of impairments determined to be severe by the
ALJ.  On these facts, the court finds no clear error by the
ALJ by not listing headaches as a severe impairment at step
two.  However, on remand, the ALJ should take into account the
impact of plaintiff's headaches when considering her
limitations on her ability to work.

**III.  Did the ALJ err in his step three analysis?**

      In his step three analysis, the ALJ made the following
findings:

> More specifically, the undersigned has
> carefully considered the requirements of
> section 1.04 of the listing of impairments
> for spinal impairments, but finds that
> there is no evidence of the requisite motor
> loss, muscle weakness, sensory or reflex
> loss, or inability to ambulate effectively,
> as required by this listing. The
> undersigned has also carefully considered
> the requirements of section 12.04 of the
> listings for mood disorders, but finds,
> based on the evidence and analysis fully
> described below, that there is no evidence
> of mental functional limitations of the
> frequency or severity required under
> subparagraphs "B" or "C" of this listing.

(R. at 17).  Plaintiff contends that the evidence demonstrates
that she meets both listed impairments.

      If plaintiff's impairment meets or equals one of the
listed impairments, then plaintiff will be found to be
disabled. 20 C.F.R. § 404.1520(d).  Plaintiff has the burden

24

at step three of demonstrating, through medical evidence, that
her impairments meet all of the specified medical criteria
contained in a particular listing.  Riddle v. Halter, 10 Fed.
Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that
manifests only some of those criteria, no matter how severely,
does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110
S. Ct. 885, 891 (1990).  Because the listed impairments, if
met, operate to cut off further inquiry, they should not be
read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818
(S.D. Ind. 1998).

> Listed impairment 1.04 is as follows:

> > 1.04 Disorders of the spine (e.g.,
> > herniated nucleus pulposus, spinal
> > arachnoiditis, spinal stenosis,
> > osteoarthritis, degenerative disc disease,
> > facet arthritis, vertebral fracture),
> > resulting in compromise of a nerve root
> > (including the cauda equina) or the spinal
> > cord. With:
> > A. Evidence of nerve root compression
> > characterized by neuro-anatomic
> > distribution of pain, limitation of motion
> > of the spine, motor loss (atrophy with
> > associated muscle weakness or muscle
> > weakness) accompanied by sensory or reflex
> > loss and, if there is involvement of the
> > lower back, positive straight-leg raising
> > test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1.

> The ALJ found "no evidence" of motor loss, muscle

weakness, sensory or reflex loss, or inability to ambulate

25

effectively (R. at 17).  However, later in his report, the ALJ
stated that "some examination reports describe a loss of
sensation and reflexes in the lower extremities (e.g., Exh.
5F, 7F, 12F, 13F), while others state that claimant has normal
sensation and reflexes (e.g., Ex. 14F, 15F, 16F)" (R. at 19).
Therefore, the court finds that the ALJ's determination of "no
evidence" of sensory or reflex loss is not supported by the
record.  On remand, the ALJ will need to make findings at step
three that are consistent with the record.  However, plaintiff
is reminded that it is her duty to point to medical evidence
that her impairments meet all of the specified criteria
contained in listing 1.04A.

Plaintiff also contends that she meets listed impairment
12.04, which is affective disorders.  The ALJ determined that
there is no evidence of mental functional limitations of the
frequency or severity required under subparagraph B the
listing.  Plaintiff contends that she satisfies the Part B
requirement.  Subparagraph B is as follows:

> B.  Resulting in at least two of the
> following:
>
> 1. Marked restriction of activities of
> daily living; or
> 2. Marked difficulties in maintaining
> social functioning; or
> 3. Marked difficulties in maintaining
> concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation,

26

each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.  Given the failure of the ALJ to consider two GAF scores of 50, which are indicative of serious symptoms which suggest an inability to keep a job, and the ALJ's serious misstatement of the psychological/psychiatric records, on remand, the ALJ will be required to reevaluate whether or not plaintiff meets or equals listed impairment 12.04 at step three after proper consideration of all the evidence in this case.

**IV.  Did the ALJ err in his analysis of plaintiff's credibility and complaints of pain?**

The framework for the proper analysis of evidence of pain is that the Commissioner must consider (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling.  Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).  If an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating

27

from that impairment are sufficiently consistent to require
consideration of all relevant evidence.  For example, an
impairment likely to produce some back pain may reasonably be
expected to produce severe back pain in a particular claimant.
Luna, 834 F.2d at 164.  Symptoms can sometimes suggest a
greater severity of impairment than is demonstrated by
objective and medical findings alone.  Direct medical evidence
of the cause and effect relationship between the impairment
and the degree of claimant's subjective complaints need not be
produced.  Luna, 834 F.2d at 165.  The absence of an objective
medical basis for the degree of severity of pain may affect
the weight to be given to the claimant's subjective
allegations of pain, but a lack of objective corroboration of
the pain's severity cannot justify disregarding those
allegations.  When determining the credibility of pain
testimony the ALJ should consider the levels of medication and
their effectiveness, the extensiveness of the attempts
(medical or nonmedical) to obtain relief, the frequency of
medical contacts, the nature of daily activities, subjective
measures of credibility that are peculiarly within the
judgment of the ALJ, the motivation of and relationship
between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective

28

medical evidence.  Thompson, 987 F.2d at 1489.

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate

language which fails to set forth the specific evidence the
ALJ considered in determining that a claimant's complaints
were not credible.  <u>Hardman v. Barnhart</u>, 362 F.3d 676, 679
(10th Cir. 2004).  On the other hand, an ALJ's credibility
determination which does not rest on mere boilerplate
language, but which is linked to specific findings of fact
fairly derived from the record, will be affirmed by the court.
<u>White</u>, 287 F.3d at 909-910.

On remand, the ALJ will need to reassess plaintiff's
credibility and complaints of pain after giving full and
proper consideration to the evidence, as set forth above.
However, the court finds numerous problems which exist in the
ALJ's credibility analysis which will need to be corrected on
remand.  In his decision, the ALJ referenced Dr. Magnotta's
consultative examination and stated that "Waddell's sign was
positive, indicating a lack of effort and exaggerated pain
behavior" (R. at 19).  However, all that is stated in Dr.
Magnotta's report is "positive Waddell's to axial compression
and passive pelvic rotation" (R. at 291).  Furthermore, the
ALJ cites to no medical evidence that a positive Waddell's
sign indicates a lack of effort and exaggerated pain behavior.
In the absence of any medical evidence to support this
conclusion by the ALJ, the ALJ overstepped his bounds into the

30

province of medicine.  Miller v. Chater, 99 F.3d 972, 977 (10th
Cir. 1996).  The ALJ is not entitled to *sua sponte* render a
medical judgment without some type of support for his
determination.  The ALJ's duty is to weigh conflicting
evidence and make disability determinations; he is not in a
position to render a medical judgment.  Bolan v. Barnhart, 212
F. Supp.2d 1248, 1262 (D. Kan. 2002).

The ALJ also noted that in an examination by Dr.
Willingham, plaintiff complained of pain only on touching of
the skin on her back, a further indication of pain
magnification (R. at 19).  However, Dr. Willingham did not
state that plaintiff's complaint of pain was a further
indication of pain magnification.  The ALJ cites to no medical
evidence that would support this conclusion.  In the absence
of any medical evidence to support this conclusion by the ALJ,
the ALJ again overstepped his bounds into the province of
medicine.

The ALJ further noted that in a December 2002 exam,
plaintiff complained of pain with any movement, considerable
give way weakness in her extremities, and strength testing
which could not be completed due to her subjective complaints
of pain (R. at 19, 411).  Again, the ALJ, without any support
in the medical records cited, or any other medical opinion

contained in the records, stated that this suggested non-cooperation and exaggeration of pain (R. at 19).

The ALJ also made reference to plaintiff's testimony, specifically noting that "claimant testified that she is able to read novels and has no problem using a computer, which demonstrates a significant ability to maintain concentration and remain seated for extended periods" (R. at 19).  Plaintiff did testify that she reads novels, but further testified that she did not have a computer in her home (R. at 535). Plaintiff never testified at the hearing that she has no problem using a computer.  Again, the ALJ has misstated the evidence.  Furthermore, the ability to read does not, of itself, demonstrate a significant ability to maintain concentration and remain seated for extended periods.  In fact, the ALJ asked the plaintiff at the hearing whether, "outside of the postural problems, in other words, sitting for too long reading or something like that, that aside, do you have any problems reading?" (R. at 535), to which plaintiff answered no.  Plaintiff had previously testified that she could only sit for 5-10 minutes (R. at 529).  She also testified that she has a problem remaining seated and watching television (R. at 535).  Therefore, there is no evidence in the record that plaintiff could read and remain seated for

extended periods.

The ALJ also made the following finding when evaluating

plaintiff's credibility:

> She also testified at the hearing that she
> has difficulty performing personal hygiene
> tasks for herself, yet she inconsistently
> testified that she was able to perform
> these same tasks for another woman for whom
> she worked as a home health aide through
> June 2001, even though claimant alleged at
> the hearing that her disabling back
> impairment began with a February 2000 fall.
> If she were truly severely injured in the
> February 2000 fall, it is unlikely that she
> would have been able to work as a home
> health aide, a heavy exertional job, for an
> extended period of time after that.

(R. at 19).  Again, the ALJ has misstated the evidence.

Although plaintiff testified that she injured her back in

February 2000 (R. at 515), plaintiff initially claimed that

she became disabled as of December 31, 2000; at the hearing

she amended her onset date to March 2, 2001 because of

substantial gainful activity prior to that time (R. at 15).

Furthermore, plaintiff indicated in her testimony that she was

not able to take care of her own needs in the first part of

2001, and was not able to take care of the needs of the lady

she worked for in 2001 either.  Plaintiff testified that she

simply worked as a companion for this lady, sitting by her

bedside.  She did no housework for the lady (R. at 518-521,

532).  Even the vocational expert testified that the way

33

plaintiff described the end of her work as a home health aide was essentially a companion, and he considered it an unskilled position performed at a light exertional level (R. at 539).

In assessing plaintiff's credibility, the ALJ also mentioned in a paragraph setting out inconsistencies in the record as a whole that no treating or examining physician had recommended that claimant undergo spinal surgery (R. at 19). Dr. Burton's medical record indicates that he did not think that any type of a surgical intervention is going to benefit her since her symptoms are primarily in the back, further noting that surgery for back pain is only 60% successful at relieving the symptoms, and noting that a fusion for back pain would not make her pain-free by any means.  Dr. Burton indicated that plaintiff understood this and would like to avoid surgery if at all possible (R. at 469).  Before the ALJ may rely on the claimant's failure to pursue treatment for his determination of noncredibility, he should consider (1) whether the treatment at issue would restore claimant's ability to work, (2) whether the treatment was prescribed, (3) whether the treatment was refused, and if so, (4) whether the refusal was without justifiable excuse.  Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993).  The ALJ has failed to demonstrate that any of the four prerequisites have been met

in this case.

The ALJ also stated that there is no medical evidence of the need for a walker, and no physician had recommended the use of a walker, which suggested to the ALJ that plaintiff's use of a walker at the hearing was to impress the ALJ of her physical limitations (R. at 19).  The ALJ had previously stated that physical and neurological exams have repeatedly shown that plaintiff is able to walk without assistance (R. at 18).  However, not mentioned by the ALJ was the fact that a physical therapy report indicated that plaintiff was instructed on the use of a cane and crutches in November 2002 (R. at 394).  In November 2002, Dr. Willingham prescribed plaintiff for crutches, a single point cane, and a bath chair (R. at 414).  Dr. Willingham noted in December 2002 that plaintiff was using crutches because plaintiff was concerned about weaknesses in her leg causing her to fall (R. at 411).  Again, the ALJ has erroneously ignored evidence favorable to the plaintiff.  Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

Finally, when this case is remanded, the ALJ should take

into account the medications used by the plaintiff and their
effectiveness, the extensiveness of her attempts to obtain
relief, and the frequency of medical contacts.  None of these
factors were discussed by the ALJ in his decision.  For
example, Dr. Magnotta stated that plaintiff had found no
benefit with lumbar epidural steroid injection, TENS unit,
physical therapy or narcotic analgesia, and that he had
nothing additional to offer the plaintiff (R. at 292).
Likewise, Dr. Willingham stated that plaintiff had been
extensively evaluated by multiple specialists and undergone
extensive physical therapy.  However, none of these provided
any improvement for the plaintiff, and Dr. Willingham further
stated that therapeutic options appear to be very limited at
this point (R. at 484).

IT IS THEREFORE RECOMMENDED that the decision of the
Commissioner be reversed, and that the case be remanded for
further proceedings (sentence four remand) for the reasons set
forth above.

Copies of this recommendation and report shall be
delivered to counsel of record for the parties.  Pursuant to
28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and
D. Kan. Rule 72.1.4, the parties may serve and file written
objections to the recommendation within 10 days after being

36

served with a copy.

Dated at Wichita, Kansas, on July 1, 2005.

s/John Thomas Reid

JOHN THOMAS REID
United States Magistrate Judge